## SECURITY STATE BANK OF ENID *et al.* v. REGER.

No. 5134.  Opinion Filed September 28, 1915.

(151 Pac. 1170.)

**CONSPIRACY—Liability—Conspiracy to Defraud Creditor.** A general creditor cannot maintain an action against a third party who fraudulently conspires with a debtor to accept a mortgage on the debtor's personal property and foreclose the same in order to hinder and delay such creditor in the collection of his debt; such damage being too remote, indefinite, and contingent to be the basis of an action.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Garfield County;*
*James B. Cullison, Judge.*

Action by Pat McInteer against the Security State Bank of Enid, a corporation, and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Hills & Manatt,* for plaintiffs in error.

Opinion by RITTENHOUSE, C.  This action was instituted by Pat McInteer. Subsequent to the filing of the appeal in this court he died, and the cause was revived in the name of J. M. Reger, as administrator of his estate. In the year 1910 plaintiff was the owner of certain lands in Garfield county, which he rented to E. C. Meyers. During the year he made certain advancements for the

purpose of purchasing seed to plant the land in broom corn and for other purposes, amounting to approximately $700. After the broom corn was baled and ready for market, the Security State Bank of Enid took a mortgage on the same to secure two notes, one for $90, and the other for $200. It is alleged that the officers and agents of the bank entered into a fraudulent and corrupt conspiracy and agreement to defraud Pat McInteer and the other general creditors of E. C. Meyers, whereby it was understood and agreed the notes should be executed and the same secured by a chattel mortgage on the broom corn; that at the time of said fraudulent agreement the said E. C. Meyers was only indebted to the bank in the sum of $90; that the mortgage was foreclosed and the broom corn sold, the bank retaining the sum of $90 and paying the balance to E. C. Meyers; that at said time the officers and agents of the bank knew that Meyers was heavily indebted to the plaintiff and that he was expecting to receive the proceeds from the broom corn to pay for the advancement so made; that the officers and agents of said bank, pursuant to said fraudulent agreement entered into between E. C. Meyers and themselves, took said mortgage for the purpose of covering up the entire value of said broom corn, and for the purpose of hindering and delaying the creditors of said E. C. Meyers in the collection of their debts, and by reason thereof plaintiff was prevented from bringing suit and causing an attachment to be levied on said broom corn, and, had it not been for said chattel mortgage, plaintiff would have brought said attachment. The petition was challenged on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled, and the question brought here for review.

It is a well-established principle of law that an action will not lie for fraudulently aiding and assisting a debtor to dispose of his property to prevent a general creditor from attaching it. This is true, for the obvious reason that such fraudulent act only prevents the general creditor from executing his intention to attach and deprives him of no property rights, he not having a lien upon the property. This proposition is supported by the great weight of authority, the leading case being that of *Lamb v. Stone*, 11 Pick. (Mass.) 527, wherein it was held:

"An action on the case for the fraud of the defendant in purchasing personal property of the plaintiff's debtor and aiding the debtor to abscond, in order to prevent the plaintiff from enforcing payment of his debt by attaching the property or arresting the body of the debtor, cannot be sustained."

Another of the leading cases which has been relied upon in subsequent decisions is that of *Wellington v. Small*, 3 Cush. (Mass.) 145, 50 Am. Dec. 719:

"In an action on the case, brought against two defendants, it was alleged that one of them was indebted to the plaintiff; that the two confederated and conspired together to prevent plaintiff from obtaining security for or payment of his debt; that, in pursuance of such purpose and intention, and in order to enable the plaintiff's debtor to take the poor debtor's oath, the defendants caused the property of the latter to be removed from his own custody and possession into the possession of the other defendant, by whom the same or the proceeds thereof were kept secreted and concealed from attachment. * * * It was held that the action could not be maintained."

See, also, *Moody v. Burton et al.*, 27 Me. 427, 46 Am. Dec. 612; *Bradley v. Fuller*, 118 Mass. 239; *Blum v. Goldman et al.*, 66 Tex. 621, 1 S. W. 899; *Tasker v. Moss*, 82

Ind. 62; *Klous & Co. v. Hennessey et al.*, 13 R. I. 332; *Allen et al. v. Fenton et al.*, 24 How. 407, 16 L. Ed. 696; *Field et al. v. Siegel et al.*, 99 Wis. 605, 75 N. W. 397, 47 L. R. A. 433.

In the latter case the court said in the syllabus:

"A general creditor cannot maintain an action on the case for conspiracy of the debtor and other persons to dispose of the debtor's property fraudulently and defeat his claim, if there was no fraud in the creation of the debt."

It is apparent from an examination of the foregoing authorities that the rule is well settled that, where the creditor has not procured a lien or other interest in the property, no matter how odious the facts may appear relative to the conspiracy or tort of the defendants, the lack of an interest in the property makes it too remote, indefinite, and contingent to be the basis of an action. This is very forcibly illustrated by Judge Morton in the case of *Lamb v. Stone, supra*, wherein the court said:

"What damage has the plaintiff sustained by the transfer of his debtor's property? He has lost no lien, for he had none. No attachment has been defeated, for none has been made. He has not lost the custody of his debtor's body, for he had not arrested him. He has not been prevented from attaching the property or arresting the body of his debtor, for he never had procured any writ of attachment against him. He has lost no claim upon or interest in the property, for he never had acquired either. The most that can be said is that he intended to attach the property, and the wrongful act of the defendant has prevented him from executing this intention. * * * On the whole, it does not appear that the tort of the defendant caused any damage to the plaintiff. But, even if so, yet it is too remote, indefinite, and contingent to be the ground of an action."

Applying the rule of the foregoing cases, we find that the broom corn was the property of E. C. Meyers; that the debt for the advancement by the landlord was not a lien upon the property, nor did the landlord have any interest whatever in the same. He had not instituted a suit nor caused a writ of attachment to issue, but merely alleges that, had the defendants not entered into the conspiracy and covered the property with a mortgage, it was his intention to attach the property.

We therefore conclude that the plaintiff, a general creditor, had no legal interest in the broom corn and could not maintain an action for damages growing out of the fraudulent disposition of the same. The conspiracy is not the ground on which the action is predicated. The right to compensation in this class of cases must grow out of an injury to property rights, and, so long as the plaintiff has not suffered any damage to his property rights, he has no cause of action.

The cause should therefore be reversed and remanded.

By the Court: It is so ordered.