Stanley John O'BANION and Louise O'Banion, Plaintiffs-Appellants,

v.

OWENS–CORNING FIBERGLAS CORP. and the Celotex Corporation, Defendants–Appellees.

No. 90–5175.

United States Court of Appeals, Tenth Circuit.

June 30, 1992.

Mark H. Iola, Ungerman & Iola, Tulsa, Okl. (David L. Weatherford and Randall L. Iola, with him on the brief), for plaintiffs-appellants Stanley John O'Banion and Louise O'Banion.

Frances E. Patton, Pierce Couch Hendrickson Johnston & Baysinger, Oklahoma City, Okl. (D. Lynn Babb and Larry G. Cassil, Jr., with her on the brief), for defendants-appellees Owens–Corning Fiberglas Corp. and the Celotex Corp.

Before ANDERSON and SETH, Circuit Judges, and SAFFELS, District Judge *.

SAFFELS, District Judge.

This is a products liability and negligence action brought under Oklahoma law. Plaintiff-appellants alleged that Stanley O'Banion suffered from asbestos-related disease as a result of exposure to the defendant-appellees' asbestos-containing products.[1] Plaintiff Stanley John O'Banion worked from 1962 through 1980 as a plumber and pipefitter. Following a one week trial, beginning on June 21, and ending on June 29, 1990, a verdict for the defendants was rendered.

On appeal, plaintiff-appellants contend that the district court erred in its pre-trial rulings which resulted in the exclusion of evidence relating to cancer and in striking plaintiffs' civil conspiracy claim. Appel-

lants also contend that the trial court erred in admitting into evidence trial testimony given by an expert witness at a previous trial in a different case. Appellants also contend that the trial court erred in instructing the jury on "state of the art" as it relates to plaintiffs' products liability claim.

I. Exclusion of evidence
relating to Cancer

■ Appellants first contend on appeal that the district court erred in excluding evidence relating to "cancer" during the trial. Appellants argue that this evidence is relevant to the following issues: (1) whether the manufacturers have fulfilled their duty to test for toxic effects of their products; (2) whether they have satisfactorily informed and warned foreseeable users of all the hazards associated with asbestos use; and (3) whether the hazards of asbestos, taken together are so great that they outweigh the utility of the substance so that asbestos is an ultra hazardous product which should not have been marketed at all.

Prior to commencing the trial below, which was one of approximately 600 asbestos-related cases arising out of the Northern District of Oklahoma, Chief Judge Dale Cook, Judge Brett, and Judge Ellison (the presiding judge in the instant case) issued a Master Order in which numerous pretrial motions were addressed and ruled upon. One of these motions was the defendant-appellees' motion to preclude the mention of the word "cancer" or the presentation of any evidence relating to cancer in "non-cancer" asbestos cases. See Master Order, filed July 28, 1989 (Case No. 87–C–522–B) (Appellants' Brief in Chief, Attachment 4, at 6). In the Master Order, the court granted defendant Owens–Fiberglas Corporation's motion in limine to exclude evidence relevant to plaintiffs' claim for dam-

* The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation.

1. This action has been stayed pursuant to the United States Bankruptcy Code. However, this stay has been lifted as to defendant Owens–

Corning Fiberglas Corporation. Accordingly, we address appellant's contentions on appeal only as they apply to appellee Owens–Corning Fiberglas Corporation. See e.g., Miller v. Armstrong World Indus., Inc., 949 F.2d 1088, 1089 n. 1 (10th Cir.1991).

ages due to increased risk of cancer or fear of cancer in cases where no diagnosis of carcinogenic asbestos-related disease or evidence of a reasonable medical probability of same exists. (Appellants' Brief in Chief, Attachment 4, at 21–22). In reaching this conclusion, the court found as follows:

> "(1) No Oklahoma authority supports admissibility of such evidence;
>
> (2) It is too speculative; and
>
> (3) Because of (2) above, even if relevant, such should not be admitted in evidence because of danger of unfair prejudice or confusion of the issues to the jury as provided in Federal Rule of Evidence 403."

*Id.*[2]

Plaintiffs later moved to permit the mention of cancer in reports of qualified experts regarding whether defendants had notice of the increased risk of cancer thereby creating a duty to warn. (Appellants' Brief in Chief, Attachment 2). The court denied plaintiffs' request and further defined a "noncancer case" as "one in which no admissible evidence is offered on behalf of the Plaintiff from a qualified medical expert stating that there is a reasonable medical probability the Plaintiff will have a cancer condition from his asbestos related disease." *Id.* n. 1.

▪ Whether the trial court erred in precluding plaintiffs from mentioning cancer and from introducing evidence relating to cancer on grounds that its prejudicial value outweighs its probative value pursuant to Fed.R.Evid. 403 is reviewed under an abuse of discretion standard. *See C.A. Assoc. v. Dow Chemical Co.*, 918 F.2d 1485, 1489 (10th Cir.1990). In this regard, "[t]he trial court is given broad discretion in the Rule 403 balancing analysis." *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1012 (10th Cir.1992).

We affirm the district court's ruling on this issue. A review of the record reflects that this case does not involve mesothelioma or other carcinogenic disease, nor did the plaintiff proffer expert testimony that there was a reasonable medical probability of his developing cancer from his alleged exposure to asbestos. Further, to date there is no Oklahoma case law which addresses whether damages may be recovered for the fear of an increased risk of developing cancer later in life. However, generally under Oklahoma law, damages which are purely speculative are nonrecoverable. *See St. John's Hosp. & School of Nursing, Inc. v. Chapman*, 434 P.2d 160, 175 (Okla.1967); *Maples v. Bryce*, 429 P.2d 741, 743 (Okla.1967); *Tom P. McDermott, Inc. v. Birks*, 395 P.2d 575, 576 (Okla.1964). Thus, to the extent that plaintiffs did not make a proffer of expert medical testimony that there was a reasonable medical probability that plaintiff Stanley O'Banion would develop a cancerous condition from his exposure to asbestos, references to cancer were properly excluded due to lack of relevance.

▪ To the extent that this evidence is arguably relevant to whether the defendant manufacturers had a duty to test and a duty to warn, *see Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 409 (5th Cir.) (*en banc*), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), we agree with those courts which have held that evidence of cancer is so prejudicial that in the absence of expert medical testimony that a "reasonable degree of medical certainty" exists that the plaintiff will develop cancer, such evidence should be excluded. *See Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1160 (4th Cir.1986) (under Maryland law, evidence is not admissible to prove damages where there is less than a reasonable probability that plaintiff will develop cancer) *Adams v. Johns-Manville Sales Corp.*, 783 F.2d 589 (5th Cir.1986) (same); *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1319–21 (5th Cir.1985) (*en banc*) (plaintiff had greater than fifty-percent chance of con-

---

**2.** At the time the three-judge panel entered its decision, the court invited plaintiffs' counsel to certify a question of law in another pending case to the Supreme Court of Oklahoma regarding whether Oklahoma law supports a claim for fear of increased risk of cancer. (Appellants' Brief in Chief, Attachment 4, at 21–22). According to representations made by appellants' counsel during oral argument, no motion to certify this question has yet been filed.

tracting asbestos-related cancer in the future so cancer-related evidence was admissible); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129 (5th Cir.1985) (evidence properly admitted where plaintiff proffered medical testimony that a reasonable medical probability existed that he would develop asbestos-related cancer). Accordingly, we conclude the district court did not abuse its discretion in excluding such evidence in this case under Fed. R.Evid. 403 where plaintiff failed to offer proof that a reasonable medical probability exists that he will develop asbestos-related cancer.

II. Admission of Former Testimony

■ Appellants next contend that the district court erred in admitting trial testimony given by an expert during another asbestos-related case arising out of the Western District of Texas. Appellants contend admission of the testimony was erroneous because the conditions of Fed. R.Evid. 804(b)(1) were not met. Thus, the appellants contend, this testimony should have been excluded under the hearsay rule.

Once again, the trial court's admission of evidence is reviewed for an abuse of discretion. The trial court allowed this testimony to be introduced under Fed.R.Evid. 804(b)(1) which provides in relevant part:

> **(b) Hearsay exceptions.**—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> > **(1) Former Testimony.**—Testimony given as a witness at another hearing of the same or a different proceeding ..., if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Appellants contend that the district court abused its discretion in admitting the former trial testimony of Dr. Hans Weill who testified on the issue of the state of the art in another case. This issue was first addressed in the court's Master Order in which the court denied both parties' request to admit the former testimony of

witnesses in other personal injury cases unless this evidence could qualify as an admission against interest, the parties stipulate to its admission or it qualifies under Fed.R.Evid. 804(b)(1). (Appellants' Brief in Chief, Attachment 4, at 4–5).

Subsequently, the trial court addressed this issue at a final pretrial conference, in which the court clarified its previous ruling for purposes of this case, and several other cases. At this conference the trial judge stated:

> "[t]here has been possibly a misinterpretation of the application of that order. In any case in which Baron & Budd appeared, that testimony would be admissible even in the Iola cases (plaintiffs' counsel in this case). The feeling of the court was that you have a compatibility of interest, commonalty of interest, you have reliability of representation; and that was the intent of the court's previous order, and that's not just in the two cases in which Iola acts as local counsel."

(Appellants' Brief in Chief, Attachment 3, at 3). Thus, the court concluded that testimony given at other trials could be offered against the parties in the present trial, if during the previous trial, the opposing party was represented by counsel of similar capabilities. The court further opined:

> "there was a commonalty of position and you have represented them as local counsel here, you have worked together with them and there would be a presumption that the interests of your clients would be well represented in those cases and that was the import of the order that the court had previously entered."

*Id.* Nowhere in the record does there appear to be consideration of the unavailability of the declarant expert witness.

We conclude that the court abused its discretion in admitting this former testimony into evidence under Rule 804(b)(1) without a finding of unavailability. One of the express requirements of this hearsay exception is that the witness be unavailable. Fed.R.Evid. 804(b)(1). Rule 804(a) defines "unavailability." Unavailability includes those instances wherein the declarant is: privileged, refuses to testify, testifies to a

lack of memory of the subject matter of the declarant's statement, unavailable because of death, or then existing physical or mental illness or infirmity. Unavailability also involves those instances wherein the declarant is "absent from the hearing and the proponent of his statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Fed.R.Evid. 804(a)(5).

In the record before the court, there does not appear to be any showing of unavailability. Rather, the primary concern seems to be the expense to the defendants in view of the large number of cases involved. While we are sympathetic to the plight of the defendants in defending themselves in numerous actions, we cannot overlook the express requirements of Rule 804(b)(1). Like the court in *Dykes v. Raymark Industries, Inc.*, 801 F.2d 810, 817 (6th Cir.1986), *cert. denied*, 481 U.S. 1038, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987), recognized, the potential risk in admitting expert testimony without an adequate opportunity to conduct cross-examination may create too heavy an aura of authoritativeness. *Id.*

 However, notwithstanding our conclusion that the district court abused its discretion, we do not find the district court's ruling to have been prejudicial to the plaintiffs in this case.[3] In this respect, appellants have not offered any explanation as to how their interests were compromised, nor does the record reflect that the appellants offered the district court an opportunity to consider why the cross examination of the expert witness in the former trial was inadequate.[4] Without such development, the district court is unable to determine what lines of questioning have been inadequately addressed during the cross-examination of the former testimony.

Furthermore, a careful review of the former testimony of Dr. Weill, reveals that his cross-examination was conducted in a very thorough manner. (R.Sup. Vol. VI, at 644–75). Plaintiffs' predecessor in interest had an opportunity and similar motive to develop Dr. Weill's testimony during cross examination and to challenge Dr. Weill's opinion on the state of the art as it relates to pipefitters. (R.Sup. Vol. VI, at 657–60). *See Clay v. Johns–Manville Sales Corp.*, 722 F.2d 1289, 1295 (6th Cir.1983), (defendants in the previous case had a sufficient motive in challenging expert testimony during the current case); *Dykes*, 801 F.2d at 817 (admission into evidence of former testimony was not erroneous because limited cross-examination of former testimony did not demonstrate predecessor was not similarly motivated to cross-examine the witness, rather, it reflected that the testimony was primarily historical and not subject to refutation); *Lohrmann*, 782 F.2d at 1160–61 ("state of the art as it relates to the health of persons exposed to asbestos products differs considerably [from state of the art as it relates to] plant workers dealing with raw asbestos...."). Accordingly, we conclude admission of the former testimony did not constitute reversible error.

### III. Jury Instructions

██ Appellants next contend that the district court erred in giving its state of the art instruction. Upon a challenge to a trial court's jury instructions, "we review the record as a whole to determine whether the instructions state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable." *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir.1988) (internal quotations

---

3. Fed.R.Civ.P. 61 provides: "No error in the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court to be inconsistent with substantial justice."

4. We agree with the *Dykes* court's conclusion that it is:

"incumbent upon counsel for the defendant when objecting to the admissibility of such proof to explain as clearly as possible to the judge precisely why the motive and opportunity of the defendants in the first case was not adequate to develop the cross-examination which the instant defendant would have presented to the witness."

*Id.*

omitted). Further, "an error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial...." *Id.* n. 19.

The trial court gave the following instruction:

### STATE OF THE ART

You are instructed that the term "state of the art" means to conform to the accepted custom and practice standard in the industry at the time the product was manufactured. *Compliance with the "state of the art" does not constitute an absolute defense to manufacturers' products liability or negligence.*

In reference to negligence, the state of the art is to be considered by you and given the weight you deem appropriate. In reference to manufacturer's products liability, you may consider state of the art in the context that the manufacturer has a continuing responsibility to warn of a defective product at any time after it is manufactured and sold if the manufacturer becomes aware of the defect.

Appellants contend that this instruction misstates Oklahoma law and incorrectly creates the inference that state of the art is a defense to a products liability action. Appellants further contend that state of the art is a defense only to a negligence action.

In *Smith v. Minster Mach. Co.*, 669 F.2d 628, 633 (10th Cir.1982), the court interpreted the role of state of the art under Oklahoma products liability law. The court concluded that "if a product is found to be in a defective condition unreasonably danger-

ous to the user, the manufacturer is not to be excused from liability simply because other manufacturers are producing similar products." *Id.* Thus, the court acknowledged that Oklahoma adopted strict liability in products liability actions. However, the court further recognized that under Oklahoma law, state of the art, may be considered relevant to whether the manufacturer is, or should be aware, of various dangers and whether the product was dangerous beyond the expectation of the ordinary customer. *Id.* at 634.[5]

We conclude that the above state of the art instruction, when read in the context of the entire set of instructions, accurately reflects Oklahoma law and does not constitute reversible error. Although the above instruction is slightly ambiguous, we do not find it to be misleading so that it is prejudicial. Moreover, while state of the art is potentially relevant in products liability claims, as mentioned above, compliance with the state of the art does not excuse a manufacturer from liability if the product is otherwise unreasonably dangerous or from its duty to warn of knowable dangers. The court's state of the art instruction does not state otherwise, nor does it create the impression that the defendant is to be exonerated for compliance with the "state of the art."

Furthermore, when this instruction is read in conjunction with the court's remaining products liability instructions, including the district court's instruction of the elements of a products liability claim, any misleading reading of the "state of the art" instruction would be remedied.[6] This is

---

5. *See also McKee v. Moore,* 648 P.2d 21, 23–24 (Okla.1982); *Kirkland v. General Motors Corp.,* 521 P.2d 1353, 1362–63 (Okla.1974) (adopting the Restatement (Second) of Torts, § 402A in products liability actions).

6. The court gave the following instruction regarding the elements of a manufacturer's products liability claim:

Essential Elements of Plaintiff's Claim of Manufacturer's Products Liability

A party claiming damages under manufacturers' products liability has the burden of proving each of the following propositions:

1. The defendants manufactured or sold asbestos containing products;

2. The defendants were in the business of selling or manufacturing such products as a part of their business;

3. The asbestos containing products were defective and because of the defect, the asbestos containing products were unreasonably dangerous to a person who uses, consumes, or might be reasonably expected to be affected by the asbestos containing products;

4. The asbestos containing products were defective at the time they were manufactured or sold by the defendants or left their control;

5. The plaintiff, Stanley O'Banion, was a person who used, consumed, or could have reasonably been affected by the asbestos containing products; and,

especially true in view of the court's instruction on strict liability under Oklahoma products liability law. In this regard, the court gave the following instruction:

### Fault Not At Issue—Manufacturer Not Guarantor

If you find that the essential elements of the plaintiff Stanley O'Banion's manufacturers' products liability claim have been established by a preponderance of the evidence, a defendant is liable even though you may find and believe that a defendant exercised all possible care in the manufacture and sale of its product.

However, the manufacturers of products such as the ones involved in this case are not guarantors that no one will get hurt in using the product or that they will incorporate the ultimate safety. The law requires the manufacturers to make products which are free of defects which make them unreasonably dangerous.

(R. Vol. I, at 32). We conclude that the district court's instructions when read as a whole adequately instruct on Oklahoma products liability law.[7]

Accordingly, having found no basis for reversal, we hereby affirm the district court's entry of judgment in favor of the defendants.

---

6. The plaintiff, Stanley O'Banion, sustained injuries directly caused by the defect in the asbestos containing products.
(R.Vol. I, at 24).

7. Appellants also challenge the district court's dismissal of their civil conspiracy claim.

(R.Sup. Vol. I, at 8–9.) To the extent that the gist of a civil conspiracy claim under Oklahoma law is damages, *see Allen v. Ramsey,* 170 Okl. 430, 41 P.2d 658, 667 (1935), this issue is rendered moot because plaintiffs failed to establish that they suffered any damages.